**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:26-CV-62130-MIDDLEBROOKS/AUGUSTIN-BIRCH**

**GREISY PINZON CAMARGO,**

**Petitioner,**

**v.**

**WARDEN, BROWARD TRANSITIONAL CENTER, *et al.*,**

**Respondents.**
_____________________________________/

**REPORT AND RECOMMENDATION TO DENY VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

This cause comes before the Court on Petitioner Greisy Pinzon Camargo's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. DE 1. The Honorable Donald M. Middlebrooks, United States District Judge, referred the Petition to the undersigned United States Magistrate Judge for a Report and Recommendation. DE 6. Respondents filed a response to the Petition, and Petitioner filed a reply. DE 8; DE 9. The Court has carefully considered the briefing and the record and is fully advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Petition [DE 1] be **DENIED**.

## I. Background

The instant Petition is the second one Petitioner has filed asserting that her detention while her immigration proceeding is pending violates her right to due process. Judge Middlebrooks granted her first Petition by ordering that she either be afforded a prompt, individualized bond hearing before an Immigration Judge or released. *Pinzon Camargo v. Warden, Broward Transitional Ctr.*, No. 0:26-cv-60858, DE 13 (S.D. Fla. Apr. 20, 2026). She had a bond hearing

before an Immigration Judge on April 28. *Id.* at DE 14-1. The Immigration Judge denied Petitioner a bond following that hearing, finding that she was "both a danger to the community and a risk of flight." *Id.* at DE 14-1 at 5. The Immigration Judge stated that Petitioner "repeatedly violated" the privilege of being in the United States "as demonstrated by [her] four arrests," with the "most recent arrest being the most serious." *Id.* at DE 14-1 at 5–6. The Immigration Judge further stated that "an illegal alien who preys upon people by conducting a lottery scam, trying to steal their money, is a danger to the community." *Id.* at DE 14-1 at 6. That same day, the Immigration Judge issued a written Order memorializing the ruling denying a bond, finding that, "[b]ased upon [Petitioner's] arrest history, she is both a danger to the community and a risk of flight." *Id.* at DE 14-5. The Immigration Judge advised Petitioner of her right to appeal the ruling, and Petitioner did not appeal. *Id.* at DE 14-1 at 6; DE 14-5 at 2.

Instead, on May 14, Petitioner filed an emergency motion in her habeas case before Judge Middlebrooks, arguing that her April 28 bond hearing "was not [a] constitutionally adequate, individualized bond hearing" because the hearing "lasted approximately ten minutes," and the Immigration Judge "issued a one-sentence written order, and failed to engage with any of the evidence Petitioner submitted." *Id.* at DE 14 at 3, 8. Petitioner contended that proper analysis of the relevant factors and her evidence demonstrated that she should receive a bond. *Id.* at DE 14 at 8–13.

Judge Middlebrooks denied the emergency motion. *Id.* at DE 20. Judge Middlebrooks stated that, during the April 28 bond hearing, the "Immigration Judge considered the record and denied bond upon finding that Petitioner did not meet her burden to demonstrate that she merited release, explaining that bond was denied based upon her four arrests." *Id.* at DE 20 at 1. Judge Middlebrooks ruled that his April 20 Order "required Respondents to provide Petitioner with a

process—a prompt, individualized bond haring—or release her," and "Respondents complied with that directive" and "provided the required hearing." *Id.* at DE 20 at 2. "A prompt hearing was held, and the Immigration Judge issued a decision on the merits based on the evidence presented." *Id.* at DE 20 at 2. Petitioner's arguments in the emergency motion went "to the correctness of the Immigration Judge's decision, not to whether Respondents complied with [the April 20] Order." *Id.* at DE 20 at 2. "To the extent Petitioner challenge[d] the substance, scope, or conduct of the bond hearing itself, including whether the immigration judge applied the proper framework or considered all relevant facts, those issues fall within the jurisdiction of the immigration court and the administrative appeals process." *Id.* at DE 20 at 2 ("Any challenge to the Immigration Judge's reasoning or factual findings must be directed to the Board of Immigration Appeals.").

Petitioner filed the instant Petition in early August. DE 1. It is undisputed that she has been detained at the Broward Transitional Center in Pompano Beach, Florida, since January 26, 2026.

## II. Analysis

Petitioner pleads three counts in the Petition. In Count I, she alleges that her continued detention for over six months violates her right to substantive due process under the Fifth Amendment to the United States Constitution. *Id.* at 11–12. In Count II, Petitioner alleges that her continued detention without a constitutionally adequate bond hearing violates her right to procedural due process under the Fifth Amendment. *Id.* at 12–14. And in Count III, she alleges that Respondents violated Judge Middlebrooks' April 20 Order because her bond hearing was "not 'individualized' within the meaning of due process" and instead was a "perfunctory proceeding[]" after "which the Immigration Judge[] issued [a] conclusory denial[] without meaningfully weighing the evidence." *Id.* at 14. The Court considers each count.

**A. Count I: Substantive Due Process**

Petitioner relies on *Zadvydas v. Davis* to argue that her continued detention for over six months violates her right to substantive due process. In *Zadvydas*, the Supreme Court considered how long an alien with a final order of removal may be detained until the removal is accomplished. 533 U.S. 678 (2001). The Supreme Court ruled that such an alien cannot be detained indefinitely; rather, to comply with due process, the alien may be detained only so long as is reasonably necessary to bring about removal. *Id.* at 689 ("In our view, the [Immigration and Nationality Act], read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention."). To give courts guidance on what period of detention may be reasonable, the Supreme Court identified six months as a "presumptively reasonable period of detention," although this presumption "does not mean that every alien not removed must be released after six months." *Id.* at 701. After the six-month period, and if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must provide evidence showing that there is a significant likelihood of removal in the reasonably foreseeable future. *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

*Zadvydas* is factually distinguishable from Petitioner's circumstances because she does not have a final order of removal. A final order of removal would start the presumptively reasonable six-month period of detention running. Petitioner maintains that her presumptively reasonable six-month period of detention began running the day she was first detained. But she does not cite

any authority—much less binding authority—applying the six-month period of detention to an alien such as her who does not have a final order of removal.

"[A]n alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "Detention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003); *see also id.* at 526 (expressing the "Court's longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings"). In *Demore*, the Supreme Court considered how long due process permits an alien convicted of a crime to be detained while a removal proceeding is pending. The Supreme Court distinguished such an alien from the aliens in *Zadvydas* who had final orders of removal and simply were awaiting removal. *Id.* at 527–29. Detention of criminal aliens while their removal proceedings are pending "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528. In addition, their detention has "a definite termination point," meaning the point at which their removal proceedings conclude. *Id.* at 529. The Supreme Court ruled that the detention of a convicted alien for six months while his removal proceeding was pending could not get habeas relief. *Id.* at 531.

Petitioner's circumstances are more like those the Supreme Court considered in *Demore* than those it considered in *Zadvydas*. Petitioner's detention will not be indefinite, but rather will have a definite termination point when her immigration proceeding concludes. Her detention serves the purposes of preventing her from fleeing during the course of the immigration proceeding and increasing the chance that she will be removed if her removal is ordered. *Zadvydas*' presumptively reasonable six-month period of detention does not apply to Petitioner.

Considering how long an alien with an ongoing removal proceeding may be detained, the Eleventh Circuit Court of Appeals has suggested, albeit in a later-vacated opinion, "that a criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case." *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018). Petitioner has received a bond hearing, and she has not been detained for a year. Her detention does not violate her right to substantive due process. The Court recommends that Petitioner be denied relief under Count I.

**B. Count II: Procedural Due Process**

Petitioner contends that her August 28 bond hearing was constitutionally inadequate. But she does not cite any authority specifying what a constitutionally adequate bond hearing must entail. "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation marks omitted)). Judge Middlebrooks already determined that Petitioner received "a prompt, individualized bond hearing" and that "the Immigration Judge issued a decision on the merits based on the evidence presented." *Pinzon Camargo*, No. 0:26-cv-60858, DE 20 at 2. Petitioner does not cite any authority providing that due process requires more.

To the extent Petitioner challenges how the bond hearing was conducted or challenges the Immigration Judge's ruling that she should not receive a bond because she poses a danger to the community and a risk of flight, Judge Middlebrooks already explained that there is a proper process for her to raise those challenges. She must direct those challenges to "the immigration court and the administrative appeals process." *Id.* at DE 20 at 2.

Petitioner maintains that her circumstances have meaningfully changed since the April 28 bond hearing and the Immigration Judge's ruling denying her a bond. Specifically, she contends that she has a pending motion to reopen her U visa petition and now has been detained several months longer. If Petitioner believes that there are circumstances that should cause the Immigration Judge to reconsider the prior ruling denying a bond, she can ask the Immigration Judge for appropriate relief. In fact, the record reflects that Petitioner requested custody redetermination at least once but then withdrew her request. DE 8-3 at 1. She has not been deprived of a process to seek redetermination based on changed circumstances.

Petitioner has not been denied procedural due process. The Court recommends that she be denied relief under Count II.

### C. Count III: Violation of Judge Middlebrooks' April 20 Order

Finally, Petitioner argues that Respondents violated Judge Middlebrooks' April 20 Order directing that she either be afforded a prompt, individualized bond hearing before an Immigration Judge or released. Judge Middlebrooks already considered her argument and ruled that "Respondents complied with that directive" and "provided the required hearing." *Pinzon Camargo*, No. 0:26-cv-60858, DE 20 at 2. As Respondents complied with the April 20 Order, the Court recommends that Petitioner be denied relief under Count III.

## III. Recommendation

The Court recommends that Petitioner's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [DE 1] be **DENIED**.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that failure to timely

object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 26th day of August, 2026.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE